UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────

SIGURD A. SORENSON,

                    Plaintiff,

        - against -

STANLEY WOLFSON,

                  Defendant.
───────────────────────────────

10 Civ. 4596 (JGK)

**MEMORANDUM OPINION
and ORDER**

JOHN G. KOELTL, District Judge:

    This action arises from a failed real estate transaction.
The plaintiff, Sigurd Sorenson, is an attorney proceeding pro
se.  Sorenson brought this action following the dismissal and
partial dismissal of his related state court actions.  The only
claims that remain in this case are Sorenson's claims for
copyright infringement and fraud, and a counterclaim plaintiff's
claim for attorneys' fees and costs against Sorenson.  The only
remaining defendant is Stanley Wolfson.  Sorenson now moves for
summary judgment dismissing the counterclaim for attorneys' fees
and costs and dismissing two of Wolfson's defenses to the
remaining fraud claims pursuant to Rule 56 of the Federal Rules
of Civil Procedure.  Sorenson also seeks leave to amend his
Second Amended Complaint.

I.

    The standard for granting summary judgment is well
established.  "The [C]ourt shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs. L.P., 22 F.3d 1219, 1223 (2d Cir. 1994).  "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution."  Gallo, 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.  The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). Summary judgment is improper if there is any evidence in the

record from any source from which a reasonable inference could be drawn in favor of the nonmoving party.  See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).  If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."  Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

II.

The following facts are undisputed unless otherwise indicated.  Defendant Stanley Wolfson is a real estate developer and the owner of Bridge Capital Corporation ("Bridge"), the original sponsor of a residential condominium development at 257 West 117th Street in New York City.  In or about January 2005, Sorenson executed three purchase agreements (the "Purchase Agreements") with Bridge to purchase three units in the condominium development for approximately $3.9 million.

The Purchase Agreements included various termination clauses.  Section 37(c) to each agreement, (the "Overages Provision"), provided that either party could terminate the agreement, without penalty, if the parties could not reach an agreement with respect to apportioning liability for overages incurred as a result of construction of the relevant units.

3

Section 49(i) to two of the Purchase Agreements, (the "Amendment Acceptance Provision"), provided that either party could terminate the agreement if the New York State Attorney General rejected a proposed amendment to the plan that offered units in the development to the public for sale (the "Plan Amendment").

Pursuant to the Amendment Acceptance Provision, Bridge submitted the Plan Amendment to the New York State Attorney General's Office (the "NYAGO") on February 11, 2005. (Sorenson Decl., Ex. 22 at 1.) In a memorandum dated March 14, 2005, the NYAGO requested that Bridge submit additional information about the Plan Amendment and make certain corrections to the Plan Amendment. (Sorenson Decl., Ex. 41.) Bridge did not respond to the NYAGO's requests. (Pl.'s Rule 56.1 Stmt. at ¶ 23; Def.'s Resp. to Pl.'s Rule 56.1 Stmt. at ¶ 23.) Instead, in a letter faxed on March 15, 2005, Bridge informed Sorenson that the NYAGO had rejected the Plan Amendment. (Sorenson Decl., Ex. 24 at 4.) Bridge invoked the Amendment Acceptance Provision shortly thereafter.

As required by the Purchase Agreements, Sorenson provided Bridge with custom architectural plans for purposes of constructing his units. (Sorenson Decl., Ex. 30 at 86-87.) On March 8, 2005, Bridge informed Sorenson that it had reviewed the plans, and proposed that Sorenson contribute an additional $729,900 for overages expected to result from construction of

4

his units.  (Sorenson Decl., Ex. 26 at 2.)  On March 15, 2005, Sorenson replied to Bridge's proposal by purportedly offering to withdraw his custom plans and have his units built to the standard specifications contained in Bridge's offering plan. (Sorenson Decl., Ex. 27.)  Bridge did not respond to Sorenson's alleged offer and instead terminated the Purchase Agreements pursuant to the Overages Provision.  (Sorenson Decl., Ex. 25 at 2-3.)

The parties dispute when Bridge invoked the termination provisions.  Sorenson maintains that Bridge invoked the termination provisions in correspondence that, while dated March 18, 2005, was not sent until March 21, 2005.  (Sorenson Decl., Ex. 25 at 1-2.)  Wolfson maintains that, in addition to sending a termination letter by fax on March 21, 2005, Bridge sent a termination letter by certified mail on March 18, 2005. (Sorenson Decl., Ex. 25 at 2.)

In April 2005, Sorenson brought suit against Bridge and Wolfson in New York State Supreme Court, New York County, asserting claims for breach of contract, specific performance, and other causes of action arising from the termination of the Purchase Agreements.  In June 2005, Bridge sold the condominium development to a company called 257/117 Realty ("257 Realty"). Sorenson, believing that Wolfson had conveyed the development in order to evade a judgment against him, brought a second state

court action in which he alleged fraudulent conveyance of the development against Bridge, Wolfson, and 257 Realty.

By Order dated January 3, 2008, Justice Charles Ramos dismissed the plaintiff's complaint in his initial state court action (the "contract action"). By Order dated March 24, 2008, Justice Ramos dismissed the plaintiff's complaint in his fraudulent conveyance action. Sorenson appealed both orders. (Sorenson Decl., Exs. 6-7.) While Sorenson's appeals were pending, Bridge moved pursuant to a fee-shifting provision in the Purchase Agreements to recover the attorneys' fees and costs that it incurred defending the contract and fraudulent conveyance suits. (Sorenson Decl., Ex. 11 at 56-58.) On February 20, 2008, Justice Ramos granted Bridge's motion, and ordered that the parties submit proposed orders instructing the referee how to proceed with respect to calculating the relevant fees and costs. (Sorenson Decl., Ex. 11 at 59-60.)

On June 10, 2008, the Appellate Division affirmed the dismissal of Sorenson's complaint in the contract action, except with respect to Sorenson's claims for breach of the covenant of good faith and fair dealing, and for specific performance. Sorenson v. Bridge Capital Corp., 861 N.Y.S.2d 280, 282-83 (App. Div. 2008). On May 28, 2009, the Appellate Division affirmed the dismissal of Sorenson's complaint in the fraudulent conveyance action and affirmed the imposition of attorneys' fees

and costs in that action in the amount of $16,386, as well as
sanctions in the amount of $2,500 each against Sorenson and his
attorney.  Sorenson v. 257/117 Realty, LLC, 881 N.Y.S.2d 43, 44
(App. Div. 2009).

     The parties also litigated a third suit in New York State
court in which Bridge alleged libel against Sorenson and
Sorenson counterclaimed against Bridge and third-party 257
Realty, alleging that the libel suit was a retaliatory strategic
lawsuit against public participation prohibited under the New
York Civil Rights Law.  Bridge Capital Corp. v. Ernst, 877
N.Y.S.2d 51 (App. Div. 2009).  Sorenson's counterclaim was
dismissed.  Ernst, 877 N.Y.S.2d at 52-53.

     Following the Appellate Division's decisions with respect
to the contract and fraudulent conveyance actions, Sorenson
initiated this action.  On February 14, 2012, this Court
dismissed or found withdrawn Sorenson's RICO claims, fraudulent
conveyance claim, unfair competition claim, criminal copyright
claim, and, to the extent predicated on activity that occurred
on or before June 10, 2007, Sorenson's civil copyright claim.
Sorenson then settled his remaining claims against all
defendants except Wolfson.  (See Stipulation of Partial
Dismissal, ECF No. 83.)  On March 14, 2014, the Court found that
Sorenson had withdrawn his claim under New York General Business
Law Section 349, and denied Wolfson's motion for summary

judgment on Sorenson's remaining claims.  (See Tr. of Oral Arg. on Mar. 14, 2014 at 19, 34.)

In settling the claims against it, Defendant 257 Realty stipulated that it be permitted to press its counterclaim for the attorneys' fees and costs that it and Bridge incurred in defending Sorenson's state and federal court actions.  (See Stipulation of Partial Dismissal, ECF No. 83; Am. Countercl. ¶ 132.)  In its counterclaim, 257 Realty alleges that it is entitled to enforce a fee-shifting provision in the Purchase Agreements as successor-in-interest to Bridge, which signed the Purchase Agreements.  (Am. Countercl. ¶ 133.)  257 Realty seeks $861,297.50 in attorneys' fees and costs incurred in defending the state court actions and $134,000 in attorneys' fees and costs incurred in defending this action.  (Am. Countercl. ¶¶ 142, 144.)


III.

Sorenson moves for summary judgment dismissing 257 Realty's counterclaim for attorneys' fees and costs against him. Sorenson first argues that any claim for fees and costs incurred in defending the state court actions must be dismissed because 257 Realty cannot in a subsequent federal suit seek relief for which it could have counterclaimed in the prior state court actions.  257 Realty replies that it should recover in this case

the attorneys' fees and costs it incurred in defending the state court actions because the relief it seeks is no broader than that already sought in state court, and because it has not yet recovered any fees or costs as a result of any state court judgment.

Under New York law, "[a]n attorney's fee must be sought in the action in which it is incurred, and not in a subsequent action." Lupoli v. Venus Labs., Inc., 731 N.Y.S.2d 217, 218 (App. Div. 2001); see also O'Connell v. 1205-15 First Ave. Assocs., LLC, 813 N.Y.S.2d 378, 379 (App. Div. 2006); 222 Bloomingdale Road Assocs. V. NYNEX Prop. Co., 703 N.Y.S.2d 737, 737 (App. Div. 2000).  For example, in O'Connell, a tenant successfully defended against a landlord's suit and then, in a subsequent proceeding, sought attorneys' fees based on a fee-shifting provision in the lease between the parties.  O'Connell, 813 N.Y.S.2d at 379.  The fee-shifting provision at issue provided that "[t]he successful party in a legal proceeding between Landlord and Tenant for non-payment of rent or recovery of possession of the Apartment may recover reasonable legal fees and costs from the other party."  Id.  The Appellate Division held that the tenant was not permitted to recover attorneys' fees because the tenant was required to seek fees in the prior proceeding.  Id.

In this case, 257 Realty seeks attorneys' fees and costs

pursuant to a fee-shifting provision providing that "[i]f either party brings an action against the other arising from this Agreement, the non-prevailing party shall pay the reasonable attorneys' fees and costs of the prevailing party in such action." (See, e.g., Sorenson Decl., Ex. 2 ¶ 35.)  This language closely tracks the language held in O'Connell to require that a party seek attorneys' fees in the action in which the fees are accrued, and thus requires that 257 Realty seek attorneys' fees in the prior state actions.

Moreover, 257 Realty has already moved in the contract and fraudulent conveyance actions to recover its reasonable attorneys' fees and costs.  That motion was granted by Justice Ramos on February 20, 2008. (See Sorenson Decl., Ex. 11.)  An award of fees and costs with respect to the fraudulent conveyance action was affirmed by the Appellate Division, Sorenson, 881 N.Y.S.2d at 44.  257 Realty fails to explain why, contrary to the rule against pursuing attorneys' fees in a separate action, 257 Realty should be permitted to seek relief from this Court when it has already sought relief from the state court, and when the state court has already found it entitled to that relief.  Indeed, 257 also fails to explain how this Court could second guess the attorneys' fees and costs that the state court has already awarded in the fraudulent conveyance action.

257 Realty's counterclaim for attorneys' fees and costs

incurred in defending the contract action also fails because the contract action remains pending.  The fee-shifting provision at issue in this case provides that the "prevailing party" is entitled to reasonable attorneys' fees and costs.  (See, e.g., Sorenson Decl., Ex. 2 ¶ 35.)  Under New York law, the prevailing party for purposes of fee shifting is the party that prevails "with respect to the central relief sought."  Chainani v. Lucchino, 942 N.Y.S.2d 735, 736 (App. Div. 2012) (citations omitted).  Evaluating whether a party has prevailed with respect to the central relief sought requires considering the "true scope of the dispute litigated" and "what was achieved within that scope."  Id. (citation omitted).

In the contract action, Sorenson brought several claims arising out of the termination of the Purchase Agreements, and sought either specific performance of his rights under the Agreements, or, alternatively, damages for breach of the Agreements.  Although the trial court dismissed Sorenson's Complaint in its entirety, the Appellate Division reinstated Sorenson's claims for breach of the covenant of good faith and fair dealing, and for specific performance.  Sorenson, 861 N.Y.S.2d at 282-83.

In its papers, 257 Realty argues that it should recover its attorneys' fees and costs in defending the contract action, despite the Appellate Division's decision, because Sorenson has

not pursued the reinstated claims on remand.  More specifically, 257 Realty argues that it is the prevailing party in the contract action because that action should be dismissed for failure to prosecute or under the doctrine of laches.  However, it plainly is not for this Court to dismiss the contract action. Any dismissal of the contract action on the basis of failure to prosecute or laches must be sought in the state court.

257 Realty recognized at oral argument on these motions that it should properly have sought dismissal from the state court, and represented that the defendants in the contract action have now demanded pursuant to New York Civil Practice Law and Rules § 3216 that Sorenson file a note of issue in that action, or have it dismissed.  257 Realty also acknowledged in the course of oral argument that it could not be considered a prevailing party in the contract action at this time.

Because the contract action remains pending, the Court cannot determine that Bridge prevailed on the central relief that Sorenson sought in the contract action.  Accordingly, 257 Realty cannot recover attorneys' fees incurred defending the contract action.

Sorenson also argues, correctly, that 257 Realty is not entitled to collect attorneys' fees and costs for prevailing in this federal action because 257 Realty settled this action in Sorenson's favor.  257 Realty acknowledges that it paid a

12

settlement in exchange for the dismissal without prejudice of all claims brought against it in this case.  257 also acknowledges that, as a result of its settlement, it is not the prevailing party in this action and cannot collect attorneys' fees and costs incurred in connection with this action.  (See Def.'s Mem. in Opp'n to Pl.'s Mot. Summ. J. of Countercl. at 26.)  In its papers, 257 Realty argues that its counterclaim for attorneys' fees and costs accrued in defending the federal action should not be dismissed because Defendant Wolfson remains in the case.  This argument is without merit.  The Amended Counterclaim does not allege a counterclaim on behalf of Defendant Wolfson, but rather, on behalf of 257 Realty as successor-in-interest to Bridge.  Indeed, in seeking leave to amend its counterclaim for attorneys' fees and costs, the defendants in this case expressly represented to the Court that the Amended Counterclaim would be brought on behalf of 257 Realty alone.  (Tr. of Oral Arg. on July 31, 2012 at 26.)  Because 257 Realty did not prevail in the federal action, and because 257 Realty cannot recover the fees it and Bridge incurred defending the state court actions, Sorenson's motion for summary judgment on 257 Realty's counterclaim for attorneys' fees and costs is **granted** and the counterclaim is **dismissed**.

IV.

Sorenson also seeks summary judgment dismissing two of Wolfson's potential defenses to the remaining fraudulent termination claim, namely, that Wolfson did not fraudulently terminate the Purchase Agreements because termination was permissible under the Amendment Acceptance Provision and the Overages Provision.

A.

Sorenson argues that Wolfson was not entitled to terminate the Purchase Agreements under the Amendment Acceptance Provision for two reasons: first, because Wolfson invoked the provision only after the deadline for doing so had passed, and, second, because the NYAGO never rejected the Plan Amendment.  Sorenson also argues, and Wolfson concedes, that Wolfson was not entitled to terminate the Purchase Agreement for one of Sorenson's three units, unit 6B, pursuant to the Amendment Acceptance Provision because the relevant Purchase Agreement did not contain an Amendment Acceptance Provision.

The Amendment Acceptance Provision provides in relevant part that the "Purchaser and Sponsor shall have the right, without penalty, to cancel, rescind, and or/terminate [the] Agreement within 5 days after Sponsor notifies Purchaser that the Attorney General has not accepted the Plan Amendment."

14

(See, e.g., Sorenson Decl., Ex. 2 ¶ 49(i).)  According to Sorenson, Wolfson did not timely invoke this termination provision because Wolfson notified Sorenson that the NYAGO had rejected the Plan Amendment on March 15, 2005, and only invoked the Amendment Acceptance Provision in a memorandum transmitted by fax on March 21, 2005, six days later.  Wolfson contends that he timely invoked the Amendment Acceptance Provision because he not only faxed the termination letter to Sorenson on March 21, 2005, but also mailed the termination letter to Sorenson by certified mail on March 18, 2005.  Sorenson does not explain why a letter sent by certified mail within the timeframe set by the Amendment Acceptance Provision would be untimely.  Accordingly, whether Wolfson actually sent the termination letter within the prescribed time limit is an issue of fact that precludes summary judgment on the issue of whether Wolfson timely exercised his termination rights under the Amendment Acceptance Provision.

Sorenson also argues that Wolfson invoked the Amendment Acceptance Provision in error because the Provision became operative only when the NYAGO rejected the Plan Amendment, and the NYAGO did not reject the Amendment until January 3, 2006. Wolfson contends that termination was proper because the Amendment Acceptance Provision became operative when the NYAGO issued its March 14, 2005 letter, which requested that Bridge submit additional information about the Plan Amendment, and make

15

several corrections to the Plan Amendment.

The Amendment Acceptance Provision provides both parties with a right of termination in the event that "the Attorney General does not accept the Plan Amendment." (See, e.g., Sorenson Decl., Ex. 2 ¶ 49(i).)  The parties dispute whether the NYAGO's letter of March 14, 2005 is covered by the phrase "does not accept the Plan Amendment."

The parties' dispute is a question of contract interpretation that must be resolved pursuant to New York law because the Purchase Agreements contain a New York choice of law clause. (See, e.g., Sorenson Decl., Ex. 2 ¶ 34.)  Under New York law, summary judgment is appropriate if contractual terms are unambiguous.  See Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992).  The determination of whether contract language is ambiguous is a matter for the Court.  Law Debenture Trust Co. of NY v. Maverick Tube Corp., 595 F.3d 458, 465-66 (2d Cir. 2010) (collecting cases). Contractual terms are not ambiguous if they provide "a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion." Gary Friedrich Enters., LLC v. Marvel Characters, Inc., 716 F.3d 302, 313 (2d Cir. 2013) (citation and internal quotation marks omitted).  Conversely, contractual terms are ambiguous if they

"suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." Id. at 313-14 (citation and internal quotation marks omitted). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations"—rather, each interpretation must be reasonable. Law Debenture Trust, 595 F.3d at 467 (citation and internal quotation marks omitted). An interpretation is not reasonable if it "strain[s] the contract language beyond its reasonable and ordinary meaning." Id. (citation omitted).

In this case, both parties offer reasonable interpretations of the Amendment Acceptance Provision. Wolfson's argument that the phrase "does not accept the Plan Amendment" refers not only to outright rejection of the Plan Amendment, as Sorenson maintains, but also to other indications that the Plan Amendment had not been or would not be accepted without changes, does not strain the meaning of Amendment Acceptance Provision beyond its reasonable and ordinary meaning. Therefore, the Court cannot conclude that the phrase "does not accept the Plan Amendment" definitely and precisely requires that the NYAGO finally reject the Plan Amendment in order to trigger the Amendment Acceptance Provision. Accordingly, the phrase is ambiguous, and the Court must look to extrinsic evidence of the parties' intent.

17

Sorenson offers two documents as extrinsic evidence for this purpose: an affidavit from former New York State Assistant Attorney General Oliver Rosengart and a letter from the NYAGO dated January 3, 2006, both of which purportedly show that the NYAGO's March 14, 2005 request for additional information and for revisions did not constitute a final rejection of the Plan Amendment. (Sorenson Decl., Ex. 28 at 1; Sorenson Decl., Ex. 29 ¶¶ 1, 4.)  These documents do not resolve the ambiguity underlying the parties' dispute because they do not clarify whether the parties intended the phrase "does not accept the Plan Amendment" to require final rejection of the Plan Amendment, or, rather, to cover other indications that the NYAGO had not accepted or would not accept the Plan Amendment. Accordingly, the phrase "does not accept the Plan Amendment" is susceptible to different, reasonable interpretations, and the Court cannot conclude that Wolfson impermissibly invoked the Amendment Acceptance Provision at this stage in the proceedings.

B.

Sorenson also argues that Wolfson was not entitled to terminate the Purchase Agreements under the Overages Provision for two reasons.  First, Sorenson argues that Wolfson invoked the Overages Provision only after Sorenson ostensibly waived the Provision.  Second, Sorenson argues that Wolfson invoked the

Provision prematurely.  Issues of fact preclude summary judgment with respect to both arguments.

"Contractual rights may be waived if they are knowingly, voluntarily, and intentionally abandoned." Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P., 850 N.E.2d 653, 658 (N.Y. 2006) (citation omitted).  "However, waiver should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual protection." Id. (citation and internal quotation marks omitted); see also Globecon Grp., LLC v. Hartford Fire Ins. Co., 434 F.3d 165, 176 (2d Cir. 2006).  "Generally, the existence of an intent to forgo such a right is a question of fact." Portfolio Advisors, 850 N.E.2d at 658 (citations omitted).

In this case, Sorenson contends that Wolfson was not entitled to terminate the Purchase Agreements under the Overages Provision because the provision was applicable only if Sorenson had his units built to custom specifications, and Sorenson waived his contractual right to have his units built to custom specifications.  According to Sorenson, he effected this waiver in an email dated March 17, 2005, which purportedly offered to withdraw the custom specifications for each of the units, and thus mooted the need to apportion liability for overages.  (See Sorenson Decl., Ex. 27.)  However, Sorenson's correspondence was by its terms only a proposal, and explicitly disclaimed waiver

19

by stating that "[t]his email . . . does not waive any of my
rights under our agreements." (Sorenson Decl., Ex. 27.) These
equivocal expressions raise issues of fact as to whether
Sorenson clearly manifested his intent to relinquish the right
to have his units built to custom specifications. Accordingly,
Sorenson is not entitled to summary judgment on this issue.

Sorenson also argues that Wolfson did not lawfully
terminate the Purchase Agreements pursuant to the Overages
Provision because he invoked the Provision prematurely. The
Overages Provision provides in relevant part:

> Depending on what Purchaser's Specifications are,
> Sponsor may request Purchaser to contribute funds to
> the Build Out ("Overages")[.] The price of such
> Overages shall be mutually agreed upon by Sponsor and
> Purchaser, in writing and as an amendment to this
> Agreement ("Amendment"), before Build Out of the Unit
> begins. . . . If Sponsor and Purchaser cannot
> mutually agree what the price of the Overages should
> be, Purchaser and the Sponsor shall have the right,
> without penalty, to terminate this Agreement . . . .

(Sorenson Decl., Ex. 2 ¶ 37(c).) The parties dispute whether
the plans that Sorenson provided to Wolfson were Purchaser's
Specifications that triggered this provision.

The Overages Provision defines "Purchaser's Specifications"
as "approved architectural plans and building specifications"
prepared by Sorenson's architect. (Sorenson Decl., Ex. 2
¶ 37(a).) Although Sorenson now urges the Court to find that
the phrase "approved architectural plans and building

specifications" refers only to plans approved by the New York
Department of Buildings, there is a reasonable basis for
disagreement about whether the parties intended to refer to
approval by the Department of Buildings or by other entities.
Moreover, Sorenson has not identified any extrinsic evidence of
the parties' intent with respect to the phrase at issue.
Accordingly, the phrase "approved architectural plans and
building specifications" is ambiguous, and the Court cannot
conclude on this motion that Wolfson prematurely invoked the
Overages Provision.

V.

Sorenson also moves to amend his Second Amended Complaint
to add claims for fraudulent conveyance, breach of contract, and
alter ego liability, and to add Bridge and USWA Realty, LLC as
defendants.  More specifically, Sorenson seeks to add fraudulent
conveyance claims against Bridge, Wolfson, and USWA Realty;
breach of contract claims against Bridge and Wolfson; and an
alter ego claim against Bridge, as an alter ego of Wolfson.

Federal Rule of Civil Procedure 15(a)(2) provides that
"[t]he court should freely give leave [to amend] when justice so
requires."  Undue delay, undue prejudice to the opposing party,
and the futility of the amendment are among the reasons to deny
leave.  Foman v. Davis, 371 U.S. 178, 182 (1962).  Although

undue delay should be considered when ruling on a motion to amend a complaint, leave to amend is typically granted unless it would prejudice the non-movant or is sought in bad faith, <u>Block v. First Blood Assocs.</u>, 988 F.2d 344, 350 (2d Cir. 1993).  Where the period of an unexplained delay is longer, less is required of the nonmoving party with respect to showing bad faith or prejudice.  <u>Id.</u>

A.

In this case, Sorenson seeks to amend his Second Amended Complaint after a significant delay.  Sorenson filed the original complaint in this action on June 11, 2010.  He was twice granted leave to amend, filing the second of his amended complaints on August 1, 2012.  Now, nearly four years after initiating this action and more than a year and a half after filing his Second Amended Complaint, Sorenson requests leave to add claims and defendants.  The Second Circuit Court of Appeals has regularly held that delays of lesser magnitude constitute undue delay.  <u>E.g.</u> <u>Zahra v. Town of Southold</u>, 48 F.3d 674, 686 (2d Cir. 1995) (finding undue delay where party sought leave two and a half years after bringing suit); <u>Cresswell v. Sullivan & Cromwell</u>, 922 F.2d 60, 72 (2d Cir. 1990) (finding undue delay where party sought leave 17 months after bringing suit and six months after filing second amended complaint).

22

Sorenson argues that his delay in seeking leave to amend is explicable because the facts underlying his application were not elicited until the end of discovery.  However, Sorenson fails to identify any facts that bear on his proposed contract claims that were learned during discovery in the federal action. Sorenson identifies some facts discovered late in discovery that bear on his proposed fraudulent conveyance and alter ego claims, namely, facts pertaining to a series of payments and transfers directed by Wolfson and made by either 257 Realty or Bridge in September, 2010.  However, Sorenson discovered the relevant facts no later than May 2, 2013, (see Sorenson Decl., Ex. 5 at 144), but waited until March 14, 2014 to seek leave to amend. Sorenson therefore sought leave more than ten months after discovering the facts upon which his motion relies.  Moreover, Sorenson sought leave almost a year after the scheduled close of fact discovery, and only after the Court resolved Wolfson's subsequent summary judgment motion, and when the parties should be prepared to go to trial after completing their pre-trial filings.  Thus, Sorenson is plainly responsible for undue delay in making his motion for leave to amend.  See McCarthy v. Dun & Bradstreet, 482 F.3d 184, 201-02 (2d Cir. 2007) (finding undue delay where plaintiff sought to amend seven months after discovering new facts because discovery was closed, non-movant

had filed for summary judgment, and more than two years had

passed since filing of initial complaint).

B.

Unexplained undue delay is typically insufficient to deny a

motion to amend without some showing that amendment would

prejudice the non-movant or is sought in bad faith.  See, e.g.,

Block, 988 F.2d at 350.

> In determining what constitutes "prejudice," [courts]
> consider whether the assertion of the new claim would: (i)
> require the opponent to expend significant additional
> resources to conduct discovery and prepare for trial; (ii)
> significantly delay the resolution of the dispute; or (iii)
> prevent the plaintiff from bringing a timely action in
> another jurisdiction.

Id.

Sorenson seeks leave to amend almost a year after the close

of discovery, more than six months after the defendant sought

summary judgment, and only after the defendant's summary

judgment motion had been resolved.  In such circumstances, the

Second Circuit Court of Appeals has regularly found that a non-

movant is prejudiced by amendment.  See, e.g., Ansam Assocs.,

Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985)

(finding amendment "especially prejudicial" and affirming denial

of leave to amend because discovery was complete and non-movant

had filed motion for summary judgment); see also Cresswell, 922

F.2d at 72.  Moreover, allowing Sorenson to add parties who

24

would be entitled to discovery in order to prepare their
defenses, and to add claims which could have been dealt with in
the previous motion for summary judgment, would prejudice the
defendant by significantly delaying the resolution of this
dispute.  See, e.g., Krumme v. WestPoint Stevens Inc., 143 F.3d
71, 87-88 (2d Cir. 1998) (finding prejudice and affirming denial
of leave to amend sought after discovery was complete because
granting leave to amend would have delayed resolution of
action); State Farm Ins. Cos. v. Kop-Coat Inc., 183 F. App'x 36,
38 (2d Cir. 2006) (summary order).  Indeed, defendants are
especially likely to suffer prejudice where, as here, granting
leave to amend would delay trial.  See Enzo Biochem, Inc. v.
Applera Corp., 243 F.R.D. 45, 49-50 (D. Conn. 2007); McCulloch
v. Hartford Life & Accident Co., No. 01 Civ. 1115, 2006 WL
931723, at *5 (D. Conn. Apr. 11, 2006).  Because the added
claims and parties would require new discovery, necessitate
additional motion practice, and delay trial, granting leave to
amend would plainly prejudice Wolfson.

It is also apparent that Sorenson's motion to amend is
dilatory.  Sorenson previously sought leave to file a Third
Amended Complaint on August 2, 2013, only after Wolfson had
expended the time and expense necessary to prepare a summary
judgment motion predicated on the Second Amended Complaint.
Sorenson amended his initial motion to amend nearly one month

after filing, without leave from the Court and shortly before Wolfson's response to that motion was due.  Sorenson later withdrew the initial motion to amend, but only after Wolfson had submitted his response.  When Sorenson renewed his motion to amend on March 14, 2014, several of Wolfson's arguments with respect to the motion were moot, forcing Wolfson to decide whether to expend additional resources to revise his response.

Moreover, Sorenson delayed consideration of Wolfson's summary judgment motion for several months by failing to comply with three separate Court Orders that he submit courtesy copies of his fully-briefed motion.  Because Sorenson's motion to amend is dilatory, made after significant undue delay, and would prejudice Wolfson, the motion for leave to amend is **denied**. Because the motion is denied, Wolfson's motion to strike it is **denied as moot**.

Wolfson requests in passing that he be awarded the attorney's fees and costs expended defending the motion to amend.  However, Wolfson has not explained the basis for why he is entitled to an award of fees and costs and his request is therefore **denied**.

### Conclusion

The Court has considered all of the arguments of the parties.  To the extent not specifically addressed above, they are either moot or without merit.  For the foregoing reasons, Sorenson's motion for summary judgment dismissing 257 Realty's counterclaim for attorneys' fees and costs is **granted**.

Sorenson's motions for summary judgment dismissing various defenses to his fraud claims, and his motion for leave to amend his Second Amended Complaint are **denied**.

**SO ORDERED.**

**Dated:     New York, New York**
**           July 8, 2014**                         _____/s/_____
                                                         **John G. Koeltl**
                                                 **United States District Judge**