UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

SIGURD A. SORENSON,

                        Plaintiff,              10-cv-4596 (JGK)

        - against -                      OPINION AND ORDER

STANLEY WOLFSON,

                        Defendant.
————————————————————————————

JOHN G. KOELTL, District Judge:

        Before the Court are three motions brought by the
defendant, Stanley Wolfson.  Wolfson moves (1) for sanctions
against the plaintiff Sigurd A. Sorenson under Rule 11 of the
Federal Rules of Civil Procedure; (2) for attorneys' fees and
costs pursuant to 17 U.S.C. §§ 505 and 1325; and (3) for
attorneys' fees and costs pursuant to 28 U.S.C. § 1927 and
pursuant to the Court's inherent powers.  For the reasons that
follow, all three motions are **denied**.

                                I.

        These motions are yet another chapter in a protracted and
spiteful dispute between the parties over an apartment in a
condominium development in Manhattan.  The Court has already set
forth the facts and the procedural background of this case in
its prior opinions, familiarity with which is assumed.  The
following facts are included because of their relevance to these
motions.

Sorenson, an attorney and the potential purchaser of three unfinished units in a residential condominium, brought a lawsuit *pro se* against Wolfson, the owner of the entity that originally sponsored the condominium's development.  Sorenson alleged that Wolfson infringed Sorenson's copyright to the floor plan and the roof plan of one unit and brought claims for copyright infringement and fraud on a state court.  Following a non-jury trial, this Court dismissed the action with prejudice, concluding among other findings that Sorenson was not the author of the floor and roof plans, that Sorenson committed fraud on the Copyright Office, and that the <u>Rooker-Feldman</u> doctrine prevented the Court from asserting jurisdiction over the fraud-on-the-court claim, which it also held was without merit.  <u>See Sorenson v. Wolfson</u>, 96 F. Supp. 3d 347, 364, 369-70 (S.D.N.Y. 2015) ("<u>Sorenson I</u>").

Subsequently, Sorenson filed a post-trial motion pursuant to Federal Rules of Civil Procedure 52 and 59(e) asking the Court to amend its findings of facts and conclusions of law and to reopen the record to include the testimony of Todd Ernst, an architectural designer who was unable to testify at trial because of illness.  The Court denied Sorenson's motion.  <u>See Sorenson v. Wolfson</u>, No. 10cv4596 (JGK), 2015 WL 4095197, at *1 (S.D.N.Y. July 7, 2015) ("<u>Sorenson II</u>").  In that post-trial motion, Sorenson argued that the Court should amend its findings

because the Court misconstrued Sorenson's testimony.   The Court held that Sorenson "failed to show that there were any issues of fact or law that the Court overlooked" to justify amending its findings.   Id. at *3.   The Court also held that Ernst's testimony was not newly discovered evidence and that Sorenson's efforts at preserving Ernst's testimony were not diligent.   Id.

Wolfson subsequently filed the three current motions.

## II.

In the first motion, Wolfson moves for Rule 11 sanctions for Sorenson's post-trial motion filed pursuant to Rules 52 and 59.   Wolfson seeks sanctions for the amount of attorneys' fees and costs in resisting the motion and making the current Rule 11 motion.   Wolfson also seeks an injunction against further litigation by Sorenson.

Rule 11 of the Federal Rules of Civil Procedure provides, in pertinent part, that, by presenting a "pleading, written motion, or other paper" to the Court, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances":

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing

3

existing law or for establishing new law . . . .
Fed. R. Civ. P. 11(b).

Rule 11 "'imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed.'" Gutierrez v. Fox, 141 F. 3d 425, 427 (2d Cir. 1998) (quoting Eastway Constr. Corp. v. City of N.Y., 762 F.2d 243, 253 (2d Cir. 1985)).  In order to determine if Rule 11 sanctions are appropriate, the Court must apply an "objective standard of reasonableness" to determine if the attorney has conducted a "reasonable inquiry" into the basis of the arguments advanced.  MacDraw, Inc. v. CIT Grp. Equip. Fin., Inc., 73 F.3d 1253, 1257 (2d Cir. 1996).  The imposition of Rule 11 sanctions is discretionary and should be reserved for extreme cases, and "all doubts should be resolved in favor of the signing attorney." K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co., 61 F.3d 123, 131 (2d Cir. 1995); Bowman Imp./Exp., Ltd. v. F.J. Elsner & Co. N. Am., No. 02cv3436 (JGK), 2003 WL 21543522, at *1 (S.D.N.Y. July 9, 2003); see also Gameologist Grp., LLC v. Sci. Games Int'l, Inc., No. 09cv6261 (JGK), 2012 WL 1446922, at *4 (S.D.N.Y. Apr. 26, 2012), aff'd, 508 F. App'x 31 (2d Cir. 2013). "Rule 11 permits a court to impose sanctions on a *pro se* litigant who violates Rule 11." Vasile v. Dean Witter Reynolds Inc., 20 F. Supp. 2d 465, 505 (E.D.N.Y. 1998), aff'd, 205 F.3d 1327 (2d Cir. 2000).

Wolfson's Rule 11 motion is denied.  The post-trial motion was without merit for all of the reasons explained in that opinion and summarized above.  But the Court cannot say that Sorenson's post-trial motion was "so objectively unreasonable as to warrant the imposition of sanctions."  <u>Gameologist Grp.</u>, 2012 WL 1446922, at *4.  It was not "patently clear that [the plaintiff's claims] ha[d] absolutely no chance of success under the existing precedents."  <u>Eastway</u>, 762 F.2d at 254.  Courts should be cautious in granting Rule 11 sanctions, and the Court here exercises its discretion to decline to award sanctions.  <u>See</u> <u>Bowman</u>, 2003 WL 21543522, at *2.

Some further words are merited.  If the motion was so without merit, it could have been disposed of with a brief opposition; however, Wolfson chose to submit an opposition brief in excess of twenty pages.  Part of Wolfson's current motion is a complaint about all of the expenses incurred in the course of the drawn-out federal and state-court litigation.  But the motion for sanctions concerns only the motion pursuant to Rules 52 and 59, which could have been handled expeditiously.  Wolfson has not streamlined the proceedings by filing a Rule 11 motion that is several inches thick and repeats some of the same arguments that were used to oppose the original motion pursuant to Rules 52 and 59.

As for the motion to enjoin Sorenson from filing further litigation, that is a drastic measure that could be justified only by more litigious conduct than has so far occurred.  In any event, the plaintiff's actions in filing a post-trial motion do not constitute the type of abuse of the judicial process that warrant the imposition of a filing injunction.  Compare Moates v. Rademacher, 86 F.3d 13, 14-15 (2d Cir. 1996) (incarcerated pro se plaintiff had "clearly abused the judicial process" when he had filed at least twelve § 1983 actions against prison officials and submitted "perjured testimony and altered documents" in at least four of them); In re Martin-Trigona, 737 F.2d 1254, 1259 (2d Cir. 1984) (plaintiff had "filed over 250 civil actions, appeals, and other matters throughout the United States, which have been pursued with persistence, viciousness, and general disregard for decency and logic").

Moreover, while the litigations filed by Sorenson could charitably be described as vexatious, they do not rise to the level of harassment that has triggered anti-suit injunctions. It is also ironic that Wolfson asks for an anti-suit injunction against Sorenson in the context of three separate motions in which Wolfson seeks, somewhat repetitively, the award of attorneys' fees and costs.

Accordingly, Wolfson's application to enjoin Sorenson from filing further actions against him without prior court approval

is denied.  See Ackerman v. Ackerman, No. 10cv6773 (JGK), 2012
WL 407503, at *3 (S.D.N.Y. Feb. 9, 2012).

**III.**

In the second motion, Wolfson moves for attorneys' fees and
costs pursuant to 17 U.S.C. § 505 and § 1325.

**A.**

Wolfson moves for costs pursuant to 17 U.S.C. § 505, which
provides:

> In any civil action under this title, the court
> in its discretion may allow the recovery of full costs
> by or against any party other than the United States
> or an officer thereof.  Except as otherwise provided
> by this title, the court may also award a reasonable
> attorney's fee to the prevailing party as part of the
> costs.

17 U.S.C. § 505.  Wolfson incorrectly characterizes his motion
as an independent claim under Federal Rule of Civil Procedure
54.  In fact, Rule 54(d)(2)(B) provides the procedure to file a
claim for attorneys' fees where they are authorized under
another statute, in this case, § 505.

Sorenson raises two technical objections to Wolfson's
motion.  First, Sorenson argues that the motion is untimely.  A
motion for attorneys' fees made pursuant to Rule 54(d)(2)(B)(i)
must "be filed no later than 14 days after the entry of
judgment."  Fed. R. Civ. P. 54(d)(2)(B)(i).  It is uncontested
that the judgment dismissing the claims was entered on April 1,
2015.  See Clerk's Judgment, ECF Dkt. No. 237.  About 28 days

later, post-trial motions were made, including a motion to alter
or amend the judgment under Federal Rule of Civil Procedure
59(e).  See Motion, ECF Dkt. No. 238.  This motion was timely
under Rule 59(e), which provides 28 days after the entry of
judgment to make such a motion, and the motion suspended the
finality of the judgment.  The Court issued its decision on that
motion on July 7, 2015.  See Sorenson II, 2015 WL 4095197, at
*1.  Wolfson filed his motion for attorneys' fees pursuant to
§ 505 and § 1325 on July 21, 2015.  See Notice of Motion, ECF
Dkt. No. 254.

Typically, a timely motion for attorneys' fees would have
to have been filed 14 days after the entry of the judgment,
which in this case would be April 15, 2015.  The question here
is whether the time to make a motion for attorneys' fee was
revived when the post-trial Rule 52/59 motion was made such that
the attorneys' fee motion was timely when it was filed 14 days
after Sorenson II issued.

The Court of Appeals for the Second Circuit has held that
"[t]he timely filing of a postjudgment motion pursuant to Fed.
R. Civ. P. 50(b), 52(b), or 59 automatically 'affect[s] the
finality of the judgment,' because such a motion seeks to alter
the judgment or reverse decisions embodied in it." Weyant v.
Okst, 198 F.3d 311, 314 (2d Cir. 1999) (quoting Fed. R. Civ. P.

59 Advisory Committee Note (1995)) (second alteration in
original).

    In Weyant, the post-judgment motions the appellant had
filed were for judgment as a matter of law pursuant to Federal
Rule of Civil Procedure 50(b) or, in the alternative, for a new
trial or a remittitur of the damages award pursuant to Rule 59.
Courts have also interpreted Weyant to apply to motions to alter
or amend the judgment pursuant to Rule 59(e), which was the
motion Sorenson filed in this case.  See Trudeau v. Bockstein,
No. 05cv1019 (GLS)(RFT), 2008 WL 3413903, at *2 (N.D.N.Y. Aug.
8, 2008) (holding motion for reconsideration was properly
treated as a Rule 59(e) motion and negated the finality of the
judgment under Weyant); see also Miltimore Sales, Inc. v. Int'l
Rectifier, Inc., 412 F.3d 685, 688-89 (6th Cir. 2005).

    Weyant was decided at a time when the timing of the motions
was different than it is today.  At that time, post-trial
motions had to be filed within 10 days of the entry of judgment,
and a motion for attorneys' fees had to be filed within 14 days
of the entry of the judgment.  In 2009, the 10-day period for
filing a Rule 59 motion was enlarged to 28 days.  See Fed. R.
Civ. P. 59 Advisory Committee Note (2009) ("Former Rules 50, 52,
and 59 adopted 10-day periods for their respective post-judgment
motions.").  This amendment left open the possibility that the
time to file a motion for attorneys' fees under Rule

54(d)(2)(B), which was 14 days after the entry of judgment, will have expired by the time a party made a timely motion for a new trial or other post-trial relief under Rules 50, 52, or 59, which is 28 days after the entry of judgment.

Cases decided after the 2009 amendments have continued to interpret Weyant as establishing that a "motion for attorney's fees is timely under FRCP 54(d)(2)(B) when filed within 14 days after the entry of judgment, or within 14 days of the resolution of postjudgment motions." Farinella v. EBay, Inc., No. 05-CV-1720, 2011 WL 1239959, at *2 (E.D.N.Y. Mar. 30, 2011) (holding supplemental application for attorneys' fees was untimely because it was filed a year after the resolution of a Rule 59(e) motion); see, e.g., Slep-Tone Entm't Corp. v. Karaoke Kandy Store, Inc., 782 F.3d 313, 317 (6th Cir. 2015); Watrous v. Borner, 995 F. Supp. 2d 84, 88 (D. Conn. 2014) ("[U]nder Weyant, a party's motion for attorney's fees is timely, unless filed outside the fourteen-day window following the court's last ruling on any pending Rule 50(b), 52(b), or 59 motions . . . ."), appeal dismissed, (Sept. 19, 2014); Registry Sys. Int'l, Ltd. v. Hamm, No. 08cv00495 (PAB) (MJW), 2012 WL 4476635, at *5 (D. Colo. Sept. 28, 2012) ("[The plaintiff] is correct that the 14 day period does not begin to run until after the Court rules on the Rule 59(e) motions.").

In opposition, Sorenson cites Moore's Federal Practice for the principle that "because the 14-day period will expire before the 28-day period for filing postjudgment motions, *in most instances* the fee motion must be filed before the expiration of the initial 14-day period if no postjudgment motion has been filed by that time."  10-54 Moore's Federal Practice - Civil § 54.151 (2015) (footnotes omitted) (emphasis added).

It may be prudent to file a post-judgment motion before the expiration of the initial 14-day period, but settled case law makes it clear that it is not necessary to do so, so long as the original judgment is stayed by the timely filing of a post-judgment motion under Rules 50(b), 52(b), or 59.  The cited treatise's reference to "most instances" is hardly imperative, and---either way---a treatise is not binding precedent. Accordingly, Wolfson's motion for attorneys' fees was timely filed.

However, there is a second obstacle to considering the merits of this motion.  Sorenson argues that Wolfson's § 505 motion should be denied because Wolfson's initial motion and brief did not include an estimate of the attorneys' fees sought. Rule 54 states that "the motion *must* . . . state the amount sought or provide a fair estimate of it."  Fed. R. Civ. P. 54(d)(2)(B)(iii) (emphasis added).  An Advisory Committee Note further explains: "The rule does not require that the motion be

supported at the time of filing with the evidentiary material
bearing on the fees. . . . What is required is the filing of a
motion sufficient to alert the adversary and the court that
there is a claim for fees, and the amount of such fees (or a
fair estimate)." Fed. R. Civ. P. 54 Advisory Committee Note
(1993).

In reply, Wolfson estimates for the first time, and without
substantiation, that his attorneys' fees "amount to some
$450,000" and argues the Court should overlook his failure to
specify this figure before because of "excusable neglect." He
does not explain why his neglect was excusable. "Excusable
neglect" is an "elastic concept' that is 'at bottom an equitable
one, taking account of all relevant circumstances surrounding
the party's omission.'" Tancredi v. Metro. Life Ins. Co., 378
F.3d 220, 228 (2d Cir. 2004) (quoting Pioneer Inv. Servs. Co. v.
Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 392, 395 (1993)).

In determining whether a party's neglect is excusable,
courts consider: "[1][t]he danger of prejudice to the [opposing
party], [2] the length of the delay and its potential impact on
judicial proceedings, [3] the reason for the delay, including
whether it was in the reasonable control of the movant, and [4]
whether the movant acted in good faith." Id. (quotation marks
and citation omitted, alterations in original).

For support, Wolfson cites Alloc, Inc. v. Pergo, Inc., No. 02-C-736, 2009 WL 1065197 (E.D. Wis. Apr. 17, 2009).  In that case, the court accepted the plaintiffs' approximation for attorneys' fees as fulfilling the requirements of Rule 54, even though it was stated in their reply brief.  However, the court pointedly did "not resolve" whether the figure was untimely but, instead, exercised its "discretion to extend the time for filing," see id. at *2, pursuant to Rule 54(d)(2)(B) ("Unless a statute or a court order provides otherwise, the motion must be filed no later than 14 days after entry of judgment.").  The court then proceeded to deny the request for attorneys' fees in that patent case on the merits.  In this case, Wolfson concedes that his estimation of attorneys' fees is untimely.

Wolfson also cites Brown v. City of New York, No. 11cv1068 (AJN), 2014 WL 896737 (S.D.N.Y. Feb. 27, 2014).  In Brown, the court held that the movant's untimely motion to strike the taxation of the costs of daily trial transcripts was the result of excusable neglect.  It held that the plaintiffs made a reasoned argument for the delay, based on the ambiguity in the applicable statute and confusing communications from the Clerk's Office that only compounded the confusion.  Id. at *2-*3. Wolfson proffers no such explanation here.

Wolfson also relies on Dolby Labs., Inc. v. Lucent Technologies, Inc., 2006 WL 1320475 (N.D. Cal. May 15, 2006),

where the court considered a motion for attorneys' fees in a
patent case on the merits, even though the motion did not
include an estimated value of the fees sought.  The court did
"not excuse Dolby's failure to comply with Rule 54(d)(2)(B),"
but held that "the length and complexity of the instant
litigation would have made it difficult for Dolby to provide
even an estimate of its attorney's fees." Id. at *5.  Those
considerations do not weigh in Wolfson's favor here.  Whether
Sorenson had a valid copyright claim for the plans to the
apartment at issue should have been a relatively straightforward
issue, and Wolfson should have been able to provide an estimate
of fees.  The litigation was complicated by the addition of
other claims by Sorenson and counterclaims by Wolfson, none of
which had merit and none of which would have justified
attorneys' fees under § 505 relating to copyrights.

Finally, Wolfson cites DeShiro v. Branch, 183 F.R.D. 281
(M.D. Fla. 1998). There, the moving party "flagrant[ly]" omitted
the amount of the attorneys' fees requested, but the Court was
"willing to use its inherent discretion to overlook this
deficiency" because of the Court of Appeals for the Eleventh
Circuit's "strong policy of resolving issues on the merits,
rather than on procedural technicalities." Id. at 285 (internal
quotation marks and citation omitted).  Furthermore, the moving
party had "compl[ied] with the underlying purpose of the statute

14

by informing" the other parties "of the amount, not in the
Motion for Attorney's Fees, but in another piece of
correspondence to plaintiffs, one which reached them around the
time the attorney fee's motion was filed with this Court." Id.
The court then denied the application for attorneys' fees on the
merits. DeShiro is easily distinguishable from this case
because Wolfson did not comply with the underlying purpose of
the statute by informing Sorenson of the anticipated amount of
fees in a separate piece of correspondence.

The Tancredi factors counsel against finding that Wolfson's
errors were the result of excusable neglect. While Sorenson may
or may not have been prejudiced by the failure to include the
estimate of attorneys' fee, a finding of excusable neglect would
delay these already protracted proceedings. Wolfson has filed
three motions for various fees (under Rule 11, §§ 505 and 1325,
and § 1927), already delaying the formal conclusion of the
litigation. And even though Wolfson claims that Sorenson's
original copyright claim was frivolous, Wolfson did not simply
go to trial on that claim to show how frivolous he thought it
was, but he prolonged the proceedings with an unsuccessful
motion for summary judgment.

Wolfson also does not provide any reason for his failure to
include an estimate of his fees in the moving papers. See
Tancredi, 378 F.3d at 228 ("Absent a sufficient reason for its

15

delay, the fact that the delay and prejudice were minimal would not excuse [the movant's] mere inadvertence."); Mancini v. CSX Transp., Inc., No. 08cv933, 2011 WL 1705537, at *4 & n. 5 (N.D.N.Y. May 4, 2011) (denying motion to modify costs filed one day late as untimely where movant "offered no explanation why its motion was untimely"); Cardona v. City of N.Y., No. 04cv955 (GEL), 2007 WL 690126, at *3 (S.D.N.Y. Mar. 7, 2007) ("More importantly, the equities weigh against a finding of excusable neglect because plaintiff has provided no legitimate reason for the delay whatsoever.").

Finally, it is unclear whether Wolfson acted in good faith, but Rule 54's requirements are clear, and "there is a clear line of authority in this Circuit that the failure to follow clear rules does not constitute excusable neglect." Morisseau v. DLA Piper, 255 F.R.D. 127, 129 (S.D.N.Y. 2008) (denying application to review taxation of costs as untimely).

In short, the defendant has done little to merit the Court's discretion in this matter.  Because the § 505 motion is procedurally deficient, it is unnecessary to decide the merits of the defendant's request for attorneys' fees pursuant to that section.  The request is, therefore, denied.

**B.**

Wolfson also moves for an award of $10,000 pursuant to 17 U.S.C. § 1325, which provides:

> Any person who brings an action for infringement knowing that registration of the design was obtained by a false or fraudulent representation materially affecting the rights under this chapter, shall be liable in the sum of $10,000, or such part of that amount as the court may determine. That amount shall be to compensate the defendant and shall be charged against the plaintiff and paid to the defendant, in addition to such costs and attorney's fees of the defendant as may be assessed by the court.

17 U.S.C. § 1325.

Wolfson argues he is entitled to $10,000 because the Court held that Sorenson committed fraud on the Copyright Office by pretending he had authored the condominium design.  Accordingly, Sorenson knew the registration of the design was a false or fraudulent representation materially affecting the rights under 17 U.S.C. §§ 1301 et seq.

Sorenson responds that Wolfson's argument is frivolous because § 1325 is part of Chapter 13, which was added to the Copyright Act of 1976 by the Vessel Hull Design Protection Act, Pub. L. 105-304, 112 Stat. 2860 (1998), and that chapter concerns only the regulation and registration of boat-hull designs and not architectural plans.

The dispute between the parties turns on the construction of the statute.  "'As in all statutory construction cases, we begin with the language of the statute.  The first step is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the

case.'"  United States v. Am. Soc. of Composers, Authors,
Publishers, 627 F. 3d 64, 72 (2d Cir. 2010) (quoting Barnhart v.
Sigmon Coal Co., 534 U.S. 438, 450 (2002) (internal quotation
marks omitted)). "'[U]nless otherwise defined, statutory words
will be interpreted as taking their ordinary, contemporary,
common meaning.'"  Id. (quoting United States v. Piervinanzi, 23
F. 3d 670, 677 (2d Cir. 1994) (internal quotation marks and
alterations omitted)).

     In this case, the statutory words are defined in the Vessel
Hull Design Protection Act.  The Act provides that "[t]he
*designer* or other owner of *an original design of a useful
article* . . . may secure the protection provided by this chapter
upon complying with and subject to this chapter."  17 U.S.C. §
1301(a)(1) (emphasis added).  A "useful article" is defined as:
"a vessel hull or deck, including a plug or mold, which in
normal use has an intrinsic utilitarian function that is not
merely to portray the appearance of the article or to convey
information. An article which normally is part of a useful
article shall be deemed to be a useful article."  § 1301(b)(2).

     The statute also defines a "vessel," a "hull," a "plug," a
"mold," and a "deck."  § 1301(b)(3)-(7).  Not surprisingly, the
statute does not define the design of a "condominium."

     The statutory language makes it plain that the Vessel Hull
Design Protection Act concerns the regulation and registration

of boat-hull designs and does not address architectural plans or other works covered by the Copyright Act.  The intellectual property protected by the Vessel Hull Design Protection Act and the Semiconductor Chip Protection Act of 1984, Pub. L. 98-620, 98 Stat. 3347, has been described "as a new and *sui generis* form of intellectual property, 'separate from and independent of the Copyright Act.'"  2-8A Nimmer on Copyright § 8A.01 (2015) (footnotes and citation omitted).  Nowhere does the statutory text suggest that Congress intended for this statute to reach beyond the terms defined in the statute to other kinds of intellectual property addressed in the Copyright Act, and the text should not be stretched beyond its clear meaning to cover an architectural plan for an apartment.

For support, Wolfson cites Woodhaven Homes & Realty, Inc. v. Hotz, 396 F.3d 822 (7th Cir. 2005).  In that case, a home construction contractor, having prevailed on a claim for infringement of copyright in architectural drawings, moved for an award of attorneys' fees under 17 U.S.C. § 505 of the Copyright Act.  The district court denied the motion.  The Court of Appeals for the Seventh Circuit reversed because, during the pendency of the appeal, the Court of Appeals had decided Assessment Technologies of WI, LLC v. WIREdata, Inc., 361 F.3d 434, 436 (7th Cir. 2004), which clarified the standard for the award of attorneys' fees under § 505.  In Woodhaven, the Court

of Appeals remanded to the district court with instructions to evaluate the contractor's motion for attorneys' fees under § 505 in light of Assessment Technologies.  Woodhaven, 396 F.3d at 824.  That was the sole holding of the case.  See id. at 825 ("[W]e Affirm in part. Vacate in part, and Remand the case for further proceedings on Robbins' request for attorney fees and costs under 17 U.S.C. § 505.").

Wolfson seizes on the fact that the Court of Appeals dismissed an argument that the district court erred by failing to grant the contractor relief under 17 U.S.C. § 1325.  The Court of Appeals wrote that the contractor "failed to conclusively establish that Woodhaven engaged in fraudulent behavior.  The [district] court dismissed Woodhaven's complaint for failing to prove infringement. It never made a finding that Woodhaven engaged in fraud."  Id.[1]

Woodhaven did not state that § 1325 covers architectural plans.  No court has ever cited Woodhaven for that proposition.

When courts have analyzed the Vessel Hull Design Protection Act, they have done so in the context of maritime designs.  See, e.g., Maverick Boat Co. v. Am. Marine Holdings, Inc., 418 F.3d 1186, 1191-92 (11th Cir. 2005) (holding manufacturer's revised

---

[1] On remand, the district court awarded $75,000 in attorneys' fees pursuant to § 505 only.  Woodhaven Homes & Realty, Inc. v. Hotz, No. 01-C-778, 2007 WL 30882, at *8 (E.D. Wis. Jan. 4, 2007).

hull design of bay boat was not entitled to protection under Vessel Hull Design Protection Act); U.S. Marine, Inc. v. United States, No. CIVA 08-2571 J3, 2010 WL 1403958, at *5 (E.D. La. Apr. 1, 2010) ("The Vessel Hull Design Protection Act, 17 U.S.C. §§ 1301-1332, provides one means of protecting original designs of *vessel hulls*.") (emphasis added).

Section 1325 is clear: it does not apply to the intellectual property at issue in this case.  Accordingly, Wolfson's motion for fees pursuant to § 1325 is denied. See Am. Soc. of Composers, Authors, Publishers, 627 F. 3d at 72 ("'When the language of a statute is unambiguous, judicial inquiry is complete.'" (quoting Marvel Characters, Inc. v. Simon, 310 F. 3d 280, 290 (2d Cir. 2002) (internal quotation marks omitted)).

Accordingly, Wolfson's composite motion for sanctions pursuant to §§ 505 and 1325 is **denied**.

**IV.**

Finally, Wolfson moves for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent powers.

Under § 1927, "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. §

21

1927.  "[A]lthough this statute expressly applies to attorneys, where a *pro se* litigant is a lawyer, § 1927 applies to abusive tactics and bad faith conduct by that individual."  Beecher v. Riverdale Riding Corp., No. 08cv6062 (NRB), 2011 WL 3427196, at *6 (S.D.N.Y. Aug. 3, 2011) (citing Sassower v. Field, 973 F.2d 75, 80 (2d Cir. 1992)).

Courts also have inherent authority to award attorneys' fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."  Chambers v. Nasco, Inc., 501 U.S. 32, 45–46 (1991) (internal quotation marks and citations omitted); see also Gameologist Grp., 2012 WL 1446922, at *3.  "The Supreme Court has cautioned that because of the 'very potency' of a court's inherent power, it should be exercised 'with restraint and discretion.'"  United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL–CIO, 948 F.2d 1338, 1345 (2d Cir. 1991) (quoting Chambers, 501 U.S. at 44).

"To impose sanctions under either [§ 1927 or the court's inherent authority], the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes."  Agee v. Paramount Commc'ns, Inc., 114 F.3d 395, 398 (2d Cir. 1997).  Thus, a finding of bad faith is a prerequisite to an award of

attorney's fees under either authority.  Id.; see also
Gameologist Grp., 2012 WL 1446922, at *3.

Wolfson argues that over the five years of this litigation,
Sorenson made baseless allegations, ignored Court orders, and
engaged in dilatory conduct.  He also argues that Sorenson's bad
faith can be inferred from his bringing the copyright claim,
committing fraud on the Copyright Office, alleging that Wolfson
infringed his copyright, submitting Ernst's affidavits---which,
Wolfson says, were based on misleading statements by Sorenson---
bringing a fraud-on-the-court claim, pursuing a meritless
diversity jurisdiction argument and prosecuting futile New York
Law claims, and several other allegedly unreasonable and
vexatious actions.

While Sorenson took unjustified positions, they do not give
rise to the clear conclusion that they were undertaken with
subjective bad faith.  See MacDraw, 73 F.3d at 1262 (showing of
subjective bad faith required under § 1927); see also Beecher,
2011 WL 3427196, at *6.  Many of Sorenson's claims were dropped
or abandoned with no effort required to defend them, including a
claim withdrawn on the second day of trial.  See United Realty
Advisors, LP v. Verschleiser, No. 14cv5903, 2015 WL 3498652, at
*3 (S.D.N.Y. June 3, 2015) (denying motion for § 1927 sanctions
where party "brought an overly broad request for injunctive
relief . . . only to drop most of the requests for emergency

23

injunctive relief after his opponents had filed an expedited response"). Section 1927 "is not a catch-all provision designed to penalize attorneys for making bad arguments." Id. at *2 (S.D.N.Y. June 3, 2015); see also Teevee Toons, Inc. v. Rep Sales, Inc., No. 03cv10148 (JGK), 2006 WL 1676387, at *1 (S.D.N.Y. June 14, 2006) (denying motion for § 1927 sanctions even where objections were "plainly wrong" because the court could not "conclude that they were filed in bad faith").

Moreover, Wolfson was responsible for, at best, sloppy responses to discovery and admonitions by the Magistrate Judge. Wolfson also pursued claims that were without merit and thus prolonged the litigation---such as his counterclaims that sought fees for his state court action. Added to this list is his meritless claim for fees under the Vessel Hull Design Protection Act, discussed above.

Most tellingly, Wolfson only seeks attorneys' fees and costs that were incurred after January 2013, when Sorenson settled with the other defendants. At that point, Sorenson offered to dismiss the claims against Wolfson for no money. Thereafter, the litigation was continued solely because Wolfson sought to pursue his claim for his prior attorneys' fees. Wolfson claims that he refused to end the litigation because of the substantial fees that he had already expended. But he does not seek those fees on this motion, and he does not explain what

24

the basis was for recovering those fees, nor does he state what the amount of fees expended was compared with the fees incurred after that date.

The Court has discretion to decide whether to impose sanctions under 28 U.S.C. § 1927 and its inherent authority, and---absent a finding of bad faith on Sorenson's behalf and in light of Wolfson's own dilatory tactics---it chooses to exercise its discretion not to impose sanctions under either power.  See, e.g., Schutte Bagclosures Inc. v. Kwik Lok Corp., No. 12cv5541 (JGK), 2014 WL 6860294, at *1 (S.D.N.Y. Dec. 5, 2014).

Accordingly, Wolfson's motion for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent authority is **denied.**

**CONCLUSION**

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed above, the arguments are either moot or without merit.  For the foregoing reasons, Wolfson's motions for sanctions and/or fees and costs pursuant to Federal Rule of Civil Procedure 11, 17 U.S.C. §§ 505 and 1325, and 28 U.S.C. § 1927 and pursuant to the Court's inherent authority are **denied**.  The Clerk is directed to close ECF Dkt. Nos. 246, 254, and 267.

**SO ORDERED.**

**Dated:    New York, New York**
**          March 21, 2016**            _____/s/_____
                                          **John G. Koeltl**
                                **United States District Judge**